UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 1:14CV2312 |
| | ) | |
| JEROME SADLER | ) | BANKR. CASE NO: 13-17696 |
| | ) | |
| Debtor | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| | ) | **OPINION AND ORDER** |
| | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on the appeal of Woods Cove II, LLC ("Woods Cove") from the decision of the Bankruptcy Court denying post-petition, unmatured interest for Woods Cove on two real estate tax certificates. For the following reasons, the Court affirms the Bankruptcy Court's decision.

**BACKGROUND FACTS**

On October 13, 2013, Debtor Jerome Sadler ("Sadler") filed a Chapter 13 bankruptcy petition. In his petition, Sadler listed an ownership interest in 21002 Raymond St., Maple Heights, Ohio, Sadler's place of residence. Woods Cove is the holder of two real estate tax certificates on Sadler's property, purchased from the County Treasurer. Woods Cove paid $4,426.04 for the first certificate and paid $2,790.15 for the second certificate. Both

certificates provide for an interest rate of 18%.

Woods Cove filed two proofs of claim for the tax certificate debt.  Claim no. 8 sought $10,951.44 as the total secured claim, including principal of $4,426.04, pre-petition interest of $2,541.96 and post-petition interest calculated at $3,983.44.  Claim no. 8 further asserted an unsecured claim for $3,485.00, including $2,150.00 in attorney fees, $1,235.00 in attorney costs and $100.00 for a notification fee.  Claim no. 9 asserted a secured claim of $5,929.07, including $2,790.15 in principal, $627.78 in pre-petition interest and $2,511.14 in post-petition interest.  Sadler objected to the post-petition, unmatured interest.

Sadler's modified Chapter 13 plan proposed to pay the principal amounts owed plus interest at 18 % on both certificates in monthly installments for approximately sixty months.

Woods Cove argued Sadler's plan failed to adequately provide for Woods Cove's total secured claim.  Woods Cove asserts that under Ohio law, it is entitled to all principal and pre- and post-petition interest on the tax certificates.  After briefing the issue for the Bankruptcy Court, which included a Stipulation of Facts, the Bankruptcy Court issued its Opinion on October 2, 2014, sustaining Sadler's Objections to Woods Cove's claims.  Wood's Cove appealed and the issue is now before the Court.

In its Memorandum of Opinion and Order, the Bankruptcy Court made a number of findings.  First, the Bankruptcy Court found it had jurisdiction over the Claims under 28 U.S.C. § 1334 and General Order No. 2012-7.  It further found that Sadler's objections and plan confirmation were core proceedings under 28 U.S.C. § 157(b)(2)(B) and (L).

The Bankruptcy Court also determined that the tax certificates were "ad valorem taxes" on real property.  An ad valorem tax is defined as: "According to value. A tax imposed

on the value of property . . . as determined by assessment or appraisal." *See In re LTV Steel Company, Inc*., 264 B.R. 477 (Bankr. N.D. Ohio July 2, 2001); Black's Law Dictionary 51 (6th ed.1990).

Specifically, the Bankruptcy Court determined that Woods Cove's claims did not involve a determination on the amount, or legality of the amount of the claims which would have placed the claims outside the Bankruptcy Court's jurisdiction.  Instead, the Bankruptcy Court held that the issues presented in Sadler's objection to Woods Cove's claims concern the allowed amount of the claims and the appropriate treatment of the claims, both of which are determinations within the Bankruptcy Court's jurisdiction.

Having found it had jurisdiction, the Bankruptcy Court analyzed Sadler's objections to Woods Cove's Proofs of Claim Nos. 8 and 9.  The Bankruptcy Court determined that as a certificate holder, Woods Cove had a claim under the Bankruptcy Code.  The Bankruptcy Court recognized that Ohio law permits a certificate holder to initiate foreclosure proceedings but allows the property owner the right to redeem the property even after foreclosure proceedings are initiated by paying the total of the certificate redemption prices of all certificates, plus additional amounts.  These include the certificate purchase price, interest accrued on the certificate price at the certificate rate of interest from the date of delivery up to the day immediately preceding the day on which the certificate purchase price is paid, plus any fee charged by the County Treasurer to the certificate purchaser and any other fees charged by any county office to record the tax certificates.

The Bankruptcy Court then looked at the relation between the certificate holder's right to payment under Ohio law versus the rights of a debtor under the Bankruptcy Code.

11 U.S.C. § 502(b)(2) expressly disallows unmatured interest on a secured claim, meaning for § 502(b)(2) purposes, interest stops accruing on the date the bankruptcy petition is filed.  The Bankruptcy Court noted that unmatured interest is not defined under the statute, however, caselaw defines it as interest that is not yet due and payable or is not yet earned at the time of the filing of bankruptcy petition.  In light of this definition, the Bankruptcy Court determined that the portion of interest sought by Woods Cove from the date of the filing of debtor's bankruptcy petition through the completion of the assumed plan sixty months later was unmatured interest that Woods Cove was not entitled to recover. The Bankruptcy Court sustained Sadler's objection.

**Woods Cove's Arguments**

Woods Cove argues Ohio law trumps bankruptcy law in that a tax certificate holder's purchase of a tax certificate from a County Treasurer does not create a new debt but transfers the first lien held by the state and is superior to all other liens and encumbrances. See O.R.C. § 5721.35.  The interest owed becomes part of the tax obligation and must be paid by the homeowner in order to extinguish the lien.  Ohio law sets forth a number of ways a tax certificate may be extinguished, none of which include a bankruptcy plan. See O.R.C. § 5721.34, 37-40.

Woods Cove contends that, if not extinguished in one of the five statutorily approved methods, the lien continues until paid in full.  While the statute does extend the life of the certificate by 180 days after the real property is no longer part of a bankruptcy estate and stays the time in which a foreclosure may be filed, it is silent concerning any accruing of interest post-petition.  According to Woods Cove, this demonstrates that the Ohio legislature

intended to protect the certificate holder, not the debtor, in a bankruptcy proceeding.

Woods Cove's argument boils down to this: Ohio law provides that tax certificates may only be redeemed by paying the certificate redemption price. That price is defined by statute as the certificate purchase price, interest accrued on the purchase price at the certificate rate of interest from the date the certificate was delivered through and including the day immediately proceeding the day the certificate redemption price is paid, the fee charged by the County Treasurer to the purchaser of the certificate and any other fees charged by any county office to record the certificate. Ohio law permits a tax certificate to be redeemed by a payment plan, however, the plan must pay the accrued interest up to the date the payment is made. If not paid in full the certificate is not redeemed, will survive bankruptcy and will allow the certificate holder to foreclose on the property. Because the Bankruptcy Court's ruling deprives Woods Cove of its full certificate redemption price, Woods Cove maintains it runs afoul of applicable Ohio law and the certificate is not redeemed by Sadler, thereby subjecting him to foreclosure. The Chapter 13 bankruptcy, therefore, offers Sadler no safe haven.

Sadler contends the Bankruptcy Court's ruling correctly determined that it had jurisdiction to determine the objections to Woods Cove's claims in Sadler's bankruptcy. Bankruptcy law allows the Court to modify secured claims, and exclude unmatured interest; therefore, the Court properly excluded unmatured interest on Woods Cove's tax certificates.

## **LAW AND ANALYSIS**

**Standard of Review**

Pursuant to 28 U.S.C. § 158(a), the district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of court, from interlocutory orders and decrees of bankruptcy judges.  An order sustaining an objection to a creditor's claim is a final order.  *In re Bowers*, 506 B.R. 249, 251 (B.A.P. 6th Cir. 2013) aff'd, 759 F.3d 621 (6th Cir. 2014) *Malden Mills Industries, Inc. v. Maroun (In re Malden Mills, Inc.),* 303 B.R. 688, 696 (1st Cir. BAP 2004).

"The bankruptcy court's conclusions of law are reviewed de novo and its findings of fact are reviewed for clear error.  *In re Lamar Crossing Apartments, L.P.* 464 B.R. 61,  2011 WL 6155714, 1 ( 6th Cir., B.A.P Sept. 20, 2011) "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders* ( *In re Morgeson* ), 371 B.R. 798, 800 (6th Cir. B.A.P. 2007).  The bankruptcy court's "finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' *Lamar*, 464 B.R. at 1 quoting *Anderson v. City of Bessemer City,* 470 U.S. 564, 573 (1985).

Bankruptcy Rule 8012 provides for oral arguments unless the District Judge determines after examination of the briefs and record that oral argument is not needed.  The parties' requests for oral argument are denied because the briefs and record adequately present the facts and legal arguments.


**Jurisdiction and Authority to Modify a Secured Claim**

Having reviewed the Bankruptcy Court's Decision, Woods Cove's Brief and Reply and Sadler's Brief, the Court finds no material disputes of fact, rather, this case involves a dispute over the Bankruptcy Court's interpretation of the relevant Bankruptcy Code and Ohio Revised Code Sections.  Thus, this is an appeal of the Bankruptcy Court's legal conclusions and the Court will conduct a de novo review.

The Court finds the Bankruptcy Court did not commit reversible error in sustaining Sadler's Objections to Woods Cove's Proofs of Claim.

The parties agree that Woods Cove is the holder of two real estate tax certificates sold by the County Treasurer on Sadler's home.  The parties do not dispute the principal amounts owed, the applicable interest rate of 18% and that the interest is calculated as simple interest.  The parties do not dispute that Woods Cove's tax certificates as presented to the Bankruptcy Court are tax claims.

Ohio law confers upon a tax certificate holder a right of payment and in order to redeem the outstanding tax certificates, the owner of real property subject to the tax lien must pay the certificate purchase price and the accrued interest.  If the property owner fails to redeem the tax certificates the holder may foreclose on the property.  See *In re Ange*, No. 11-20597, 2014 WL 2565916 (Bankr. N.D. Ohio June 6, 2014) citing O.R.C. §§ 5721.37 and 5721.38.

Because Woods Cove alleged it filed a foreclosure action before Sadler filed his bankruptcy petition, O.R.C. § 5721.38(B) covers what amounts Sadler had to pay to redeem the tax certificates.  Central to the issue before the Court is Section 5721.38(B)(2), which defines the redemption price to include:

> Interest on the certificate purchase price for each tax certificate sold respecting the parcel at the rate of eighteen per cent per year for the period beginning on the day on which the payment was submitted by the certificate holder and ending on the day the parcel is redeemed under this division.

Upon Sadler's filing his bankruptcy petition, Woods Cove submitted its Proofs of Claim to the Bankruptcy Court in order to receive the statutory amounts owed.  11 U.S.C. § 505(a)(1) confers jurisdiction upon bankruptcy courts to:

> (a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

However, 11 U.S.C. 505(a)(2)C) holds:

> (2) The court may not so determine--
>
> **(C)** the amount or legality of any amount arising in connection with an ad valorem tax on real or personal property of the estate, if the applicable period for contesting or redetermining that amount under applicable nonbankruptcy law has expired.

The parties do not dispute that the applicable period for contesting or redetermining the amount has expired.  Moreover, the parties do not contest, and the Bankruptcy Court so held, that the real estate taxes are ad valorem taxes under Ohio law.

Woods Cove argues that the Bankruptcy Court lacked jurisdiction under 11 U.S.C. § 505(a)(2)(C) to determine the amount or legality of the amount of Woods Cove's ad valorem tax claims.  By modifying the post-petition interest owed by Sadler on the tax certificates, Woods Cove contends the Bankruptcy Court improperly determined the amount or legality of an amount arising from or connected to an ad valorem tax.  Moreover, the Bankruptcy Court was bound to apply Ohio law, which requires full payment of the principal

and interest accrued on the tax certificates up to the day of payment.

The Court finds no reversible error by the Bankruptcy Court in holding it had jurisdiction to determine the allowed amount of Woods Cove's claims. There is no dispute on the amount of the tax certificates nor any dispute over the legality of the amount of the tax certificates, the two distinct issues presented by Woods Cove. Instead, the Bankruptcy Court was within its jurisdiction and correctly applied bankruptcy law to determine the allowed amount of Woods Cove's claims in light of the bankruptcy rules. In the *Ange* decision, the Bankruptcy Court for the Northern District of Ohio held:

> Section 505 precludes a bankruptcy court from determining the amount of an ad valorem tax, but it does not prevent a bankruptcy court from determining the amount of a tax claim, including tax claims which are ad valorem in nature. The word "claim" does not appear in § 505(a)(2)(C). CapitalSource cites no court which has adopted its interpretation of § 505(a)(2)(C), and the plain language of 11 U.S.C. § 505(a)(2)(C) refers to determining the amount owed on an ad valorem tax, not determining the allowed amount and treatment of a tax claim.

2014 WL 2565916, at *4.

The Court finds the reasoning of the court in *Ange* persuasive. The Bankruptcy Court did not determine the amount or legality of the amount on the tax certificates, instead, it engaged in its obligation to determine the treatment of a tax claim before it. The Bankruptcy Court for the Northern District of Ohio has consistently applied this reasoning (See *In re Slade-Lanier,* No. 12 13436, 2014 WL 2565919, at *11 (Bankr. N.D. Ohio June 6, 2014)) and Woods Cove has not provided any caselaw contrary to the holding in *Ange*. This Court finds the Bankruptcy Court's interpretation to be sound and affirms.

Woods Cove next argues that 11 U.S.C. § 511(a) further supports its argument that the Bankruptcy Court should not have applied bankruptcy law in approving Sadler's plan, which

9

required Sadler to pay less than the full post-petition interest allowed under Ohio law.

11 U.S.C. § 511(a) reads:

> If any provision of this title requires the payment of interest on a tax claim or on an administrative expense tax, or the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim, the rate of interest shall be the rate determined under applicable nonbankruptcy law.

A plain reading of Section 511(a) merely requires the Bankruptcy Court apply the state statutory interest rate allowed on a tax claim, which is 18 %. The Bankruptcy Court in sustaining Sadler's objections did not look to bankruptcy law to set the rate of interest and Section 511(a) is silent on what part of a claim is allowable. The interest rate is not at issue here, only what portion of the claim is allowable under the Code.

This reading is supported by the O.R.C. § 5721.30(G), which defines "certificate rate of interest" as:

> ...the rate of simple interest per year bid by the winning bidder in an auction of a tax certificate held under section 5721.32 of the Revised Code, or the rate of simple interest per year not to exceed eighteen per cent per year fixed pursuant to section 5721.42 of the Revised Code or by the county treasurer with respect to any tax certificate sold or transferred pursuant to a negotiated sale under section 5721.33 of the Revised Code. The certificate rate of interest shall not be less than zero per cent per year.

Thus, interest rate is a fixed percentage rate at which interest accrues. Woods Cove conflates "interest rate" with "interest accrued" ("the Bankruptcy Court is prohibited by the Bankruptcy Code from modifying the interest rate set by Ohio law." (Appellant brief pg.60)). However, interest rate and interest accrued are two separate and distinct concepts in both traditional transaction law and under Ohio's tax certificate redemption scheme. This distinction is evidenced by O.R.C. § 5721(F)(2), wherein the statute clearly describes the

accrual of interest on a tax certificate at the rate of interest not as synonymous with the rate of interest.

> Interest accrued on the certificate purchase price at the certificate rate of interest from the date on which a tax certificate is delivered through and including the day immediately preceding the day on which the certificate redemption price is paid.

Therefore, the Bankruptcy Court did not improperly alter the rate of interest but applied the 18% rate all parties agree was the rate established by Ohio law, thereby determining the allowed amount of Woods Cove's claims under Section 505.  Therefore, the Bankruptcy Court's ruling did not run afoul of Section 511 as it did not alter the rate of interest on the tax certificates.

The Bankruptcy Court next applied 11 U.S.C. § 502, which reads:

> (a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.
>
> (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that--
>> (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;
>>
>> (2) such claim is for unmatured interest;

The Bankruptcy Court looked to caselaw to define unmatured interest and held that unmatured interest is "interest that is not yet due and payable or is not yet earned at the time of the filing of the petition." ( ECF # 1-2 pg id 22).  Woods Cove's claims sought post-

petition interest running from the filing of Sadler's petition, through the plans assumed completion period of sixty months.  Based on the above definition, the Bankruptcy Court sustained Sadler's objection that Woods Cove's claims contained unmatured interest and disallowed  the unmatured interest Woods Cove sought after Sadler filed his petition.

 The Bankruptcy Court properly considered the claims before it, applied Section 502(b)(2)'s prohibition against allowing unmatured interest and disallowed the unmatured interest on Woods Cove's claims.  This Court agrees that unmatured interest is not allowed under 502 and, in light of *Ange,* finds the Bankruptcy Court correctly precluded unmatured interest on Woods Cove's claims under the plain language of Section 502.

**The Chapter 13 Plan is not a Redemption**

The Bankruptcy Court next determined that Sadler's plan did not constitute a redemption of Wood Cove's tax certificates.  The Bankruptcy Court acknowledged that 11 U.S.C. § 1322(b)(2) does not allow the debtor to modify a security interest in the debtor's principal estate.  However, the court determined that while the tax liens were secured by the debtor's residence they were not security interests because they were not liens "created by agreement" as 11 U.S.C. §101(51) defines a security interest.  Therefore, the tax liens were subject to modification.

Woods Cove argues that Ohio law provides the only means of redeeming a tax certificate.  At its heart, Ohio law requires full payment of the certificates and full payment includes interest up to the day payment is made.  O.R.C. § 5721.38 allows redemption via a payment plan.  Woods Cove contends this still requires payment of the interest up to the day on which full payment is made.  Because the plan does not allow interest through the day the

payment is made, Woods Cove argues redemption has not occurred and Woods Cove will still hold a lien after completion of the Chapter 13 plan, allowing it to foreclose.

The Bankruptcy Court rejected this position, finding that bankruptcy law permits modification of an allowed secured claim over objection so long as the modification provides for payments equal to the present value of the claim as of the effective date.  The court found that the Plan will pay the certificates in full at the 18% interest rate.  In doing so, the debt is resolved under the Bankruptcy Code irrespective that under Ohio law the certificates would not be redeemed.

The Court agrees with the Bankruptcy Court's reasoning.  11 U.S.C. § 1325(a)(5)(B) expressly permits modification of secured claims over objection.  In *In re Slade-Lanier*, the court determined this very issue, finding the Bankruptcy Code trumped state law claims. "Chapter 13 of the Bankruptcy Code allows debtors to "modify the rights of holders of allowed secured claims."  11 U.S.C. § 1322(b)(2); *In re Lane,* 280 F.3d 663 (6th Cir.2002); *cf. In re City of Detroit, Mich.,* 504 B.R. 97, 150 (Bankr.E.D.Mich.2013) (stating that the Bankruptcy Code permitted impairment of creditors' state law rights to payment even when the Michigan Constitution provided that the rights were not subject to impairment).  Creditors may not take actions that violate the terms of a confirmed plan."  *In re Slade-Lanier,* No. 12 13436, 2014 WL 2565919, at *11 (Bankr. N.D. Ohio June 6, 2014).  Because the Bankruptcy Code allows the Bankruptcy Court to determine the allowance of tax claims, allows modification of secured claims and precludes unmatured interest, the Bankruptcy Court's holding was not contrary to law and the Court affirms its decision.

Woods Cove also contends the Bankruptcy Court should have abstained from ruling

on the matter because of its potential prejudice to the taxing authority.  Woods Cove believes the Bankruptcy Court's ruling permits Sadler to pay less than the amount owed on the tax certificates under Ohio law, resulting in an order directing the County Treasurer to act contrary to Ohio law.

The Bankruptcy Court, relying on *In re Ange*, found that § 505's jurisdiction limitation did not apply to the issue before it and therefore did not limit the Court's jurisdiction to decide the matter and abstention was not required.

The Court agrees.  For the reasons stated above, Section 505 does not limit the Bankruptcy Court's jurisdiction to determine the allowed amount of a tax certificate claim nor does it limit the treatment of that claim.  Therefore, the Bankruptcy Court was not required to abstain.

Therefore, for the foregoing reasons, the Court affirms the Bankruptcy Court's ruling sustaining Sadler's objection to Woods Cove's claims no. 8 and no.9.

**IT IS SO ORDERED.**


                                          s/ Christopher A. Boyko  
                                          **CHRISTOPHER A. BOYKO**  
                                          **United States District Judge**

**Dated:  December 29, 2015**